UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Norfolk Division

KERRIE W. BRIGGS,

        Plaintiff,

    v.                          ACTION NO. 2:06cv154

GARY W. WATERS,
WILLIAM O. WATSON, in his official
capacity as Sheriff of the City of
Portsmouth, and
THE CITY OF PORTSMOUTH SHERIFF'S OFFICE,

        Defendants.

<u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendants City of Portsmouth Sheriff's Office and William O. Watson's Motion to Dismiss and Defendant Gary. W. Waters's Motion to Dismiss Amended Complaint. For the reasons set forth herein, the court **GRANTS-IN-PART** and **DENIES-IN-PART** each motion.

## I.  Factual and Procedural History[1]

On June 1, 1998, the City of Portsmouth Sheriff's Office ("the Sheriff's Office"), located in Portsmouth, Virginia, hired Plaintiff Kerrie W. Briggs ("Briggs") as a deputy sheriff. Am. Compl. ¶ 2 (July 12, 2006). During the course of her employment, Defendant Gary W. Waters ("Waters"), who was then the Sheriff of Portsmouth, sexually harassed Briggs. <u>Id.</u> ¶ 18. This harassment

---

[1] All facts are drawn from the allegations set forth in Briggs's amended complaint.

included sexually explicit comments, flirtatious conduct, and attempts to date her.  Id. ¶¶ 5-7, 9-10.  Briggs rejected Waters's advances.  Id. ¶ 5.

On November 21, 2004, Briggs was part of a traffic violation incident involving Leslie O. Cox ("Cox"), a City of Portsmouth police officer.  Id. ¶ 11.  Upon learning of the incident, Waters instructed Cox to charge Briggs with obstruction of justice.  Id. ¶ 12.  Briggs was convicted in Portsmouth City General District Court.[2]  Id. ¶ 13.  Waters fired Briggs after she was convicted. Id. ¶ 14.  Other employees in the Sheriff's Office had been convicted of "criminal charges of a more serious nature" than obstruction of justice, but had not lost their jobs.  Id.  Briggs filed a complaint with the Equal Opportunity Employment Commission ("EEOC") in July 2005.  Id. ¶ 17.  In January 2006, William O. Watson replaced Waters as Sheriff of Portsmouth and rehired Briggs. See id. ¶ 3.[3]

On or about February 24, 2006, Briggs filed a complaint in the Circuit Court for the City of Portsmouth, naming Waters, Cox, and the City of Portsmouth ("the City") as defendants.  On March 17, 2006, Waters, with the consent of Cox and the City, removed the case to this court.  Briggs's complaint alleged sexual harassment

---

[2]The obstruction of justice charge was later dismissed on appeal to the Portsmouth Circuit Court.

[3]See infra note 9 and accompanying text.

and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").[4]   Waters and the City filed Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6).

On June 28, 2006, this court issued an Order dismissing Briggs's Title VII claims against Waters and the City, and granting Briggs leave to amend her complaint. Briggs v. Waters, No. 06-154, 2006 WL 1982758, *1 (E.D. Va. June 28, 2006).  This court concluded that Briggs could not sue Waters in his individual capacity because the Sheriff's Office, not Waters, was Briggs's employer within the meaning of Title VII. Id. at *2.  The court further concluded that Briggs could not sue Waters in his official capacity because Watson had replaced Waters as Sheriff. Id.  Finally, this court reasoned that Briggs could not bring a Title VII claim against the City because Briggs was an "employee of the Sheriff's Office only, an entity legally distinct from the City." Id.

On July 12, 2006, Briggs filed an amended complaint, adding as defendants the Sheriff's Office and Watson, in his official capacity as Sheriff ("Watson").  Count One of the amended complaint alleges sexual harassment and retaliation in violation of Title VII. Am. Compl. ¶¶ 18-25.  Count Two alleges that Waters, in his individual capacity, violated 42 U.S.C. § 1983 by depriving

---

[4]The complaint also set forth a Malicious Prosecution claim against Cox.  On May 3, 2006, an Agreed Order was signed, dismissing with prejudice this claim.

Briggs of her right to equal protection of the laws under color of authority conferred by state law.  Id. ¶ 28.

## II.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  A district court should not dismiss a complaint under Rule 12(b)(6) "unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir. 2005) (internal quotation omitted).

## III.  Discussion

At a threshold level, the court must determine who are the proper defendants in this lawsuit.  The court then turns to the issue of whether Briggs has stated a claim upon which relief can be granted.

## A.  The Sheriff's Office And Watson, In His Official Capacity, Are Proper Defendants As To Briggs's Title VII Claims.

The Sheriff's Office and Watson assert that they are not proper defendants in this lawsuit.  Br. in Supp. of Mot. to Dismiss at 2-6.  They argue that the Sheriff's Office is not a proper defendant because it is not a legal entity susceptible to suit.  Id. at 2-3 (explaining that suing the Sheriff's Office is the

4

equivalent of suing a building or facility).  They further argue that Sheriff Watson's administration cannot be held liable for the acts of Waters because Watson's administration is legally independent from Waters's administration.  Id. at 4.[5]  Finally, they argue that because Watson was not named in Briggs's original EEOC complaint, Briggs may not bring a Title VII action against him.  Id. at 6-7.  The court addresses each argument in turn.

> **1.   Briggs May Bring Title VII Claims Against "The Sheriff's Office."**

The qualified voters of each county and city in Virginia elect a sheriff.  Va. Const. art. VII, § 4.  The "sheriff is a constitutional officer and his duties are regulated and defined by . . . statute."  Hilton v. Amburgey, 96 S.E.2d 151, 152 (Va. 1957).  Although neither the constitution nor the Virginia Code explicitly creates a "sheriff's office," the Virginia Code uses this term repeatedly.  See, e.g., Va. Code Ann. § 15.2-1613 (2006) ("Any county

---

[5]Sheriff Defendants also contend that Watson is not a proper defendant because Briggs did not sue Waters in his official capacity, and, consequently, substitution of Watson as a defendant under Federal Rule of Civil Procedure 25(d) is improper.  Br. in Supp. of Mot. to Dismiss at 3-4.  This argument is misplaced and irrelevant at this juncture.  Briggs brought this lawsuit on February 24, 2006, after Waters left office, and she sued Waters in his individual capacity.  Briggs served Waters with the original complaint, which was then removed to this court on March 17, 2006. As a result of this court's June 28, 2006, Order, Briggs filed an amended complaint, naming the Sheriff's Office and Watson, in his official capacity, as defendants.  See Briggs, 2006 WL 1982758, *4; supra at 3.  For the reasons set forth in this Memorandum Order, infra Part III.A.2, Watson's administration is liable for Title VII violations committed during Waters's administration.

or city may appropriate funds for the operation of the sheriff's office."); § 32.1-48.06 (defining law-enforcement agency as "any sheriff's office, police department, . . . or other agency or department").

For several reasons, the court concludes that Briggs can bring her claims against the Sheriff's Office.  First, the court has already ruled that a sheriff in his or her individual capacity is not an employer within the meaning of Title VII.  Briggs, 2006 WL 1982758 at *2; see also Blankenship v. Warren County, Va., 931 F. Supp. 447, 449 (W.D. Va. 1996) (ruling that a Sheriff "cannot be held liable in his individual capacity under Title VII").  Implicit in this conclusion is the proposition that either the sheriff's office or the sheriff in his or her official capacity is an employer within the meaning of Title VII.  See King v. McMillan, No. 05-521, 2006 WL 2126279, *1 (W.D. Va. July 28, 2006) (concluding that a sheriff was a proper defendant in her official capacity); Wiatt v. Marrs, No. 04-461, 2005 WL 552563, *1 (W.D. Va. Feb. 22, 2005) (same); Efird v. Riley, 342 F. Supp. 2d 413, 420-21 (M.D.N.C. 2004) (noting that district courts in the Fourth Circuit have consistently assumed that "the office of sheriff" is properly named as an employer within the meaning of Title VII).  After all, persons working in a sheriff's office must work for someone.

Second, not only does the Virginia Code refer to both a sheriff and a sheriff's office, but the Virginia Attorney General,

in interpreting the Virginia Code, has used the terms "sheriff's office" and "sheriff" interchangeably.  See, e.g., Op. Va. Att'y Gen. 04-045 (2004) ("In counties without county police departments that rely on sheriff's offices to perform law-enforcement functions and serve as officers of the courts and local jailers, the local sheriff's office is the 'primary law enforcement agency.'"); Op. Va. Att'y Gen. 04-035 (2004) ("Ultimately, the decision whether a sheriff's office is complying with the standard uniform specifications would be determined by a civil proceeding in the appropriate circuit court.").   Third, and finally, it is not uncommon for a sheriff's office to appear as a named party in Virginia courts.   See, e.g., Lindenfeld v. City of Richmond Sheriff's Office, 492 S.E.2d 506 (Va. Ct. App. 1997); Stafford County Sheriff's Office v. DeBord, 469 S.E.2d 88 (Va. Ct. App. 1996).   Accordingly, Briggs may maintain her Title VII claims against the Sheriff's Office.

## 2.   The Court May Hold Watson's Administration Liable For Title VII Violations Committed During Waters's Administration.

The court must also address whether it can hold the Sheriff's Office and Watson (collectively, "Sheriff Defendants")[6] liable under Title VII for violations committed during Waters's administration.   Sheriff Defendants present numerous arguments as

---

[6]See Kentucky v. Graham, 473 U.S. 159, 166 (1985) (explaining that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

to why Briggs cannot assert claims against the administration of Watson for wrongs committed by Waters.  They frame the issue as a straightforward question of successor liability.  <u>See</u> Br. in Supp. of Mot. to Dismiss at 4-6.  Because Watson is not Waters's successor, they argue, his administration cannot be held liable for Waters's acts.  <u>Id.</u> at 4.  Sheriff Defendants correctly note that when a sheriff ceases to serve, the sheriff's deputies lose their positions.  <u>See</u> <u>Ramey v. Harber</u>, 589 F.2d 753, 755 (4th Cir. 1978). Also, the Virginia Attorney General has opined that a sheriff may not enter into an agreement that binds his successors in office. Op. Va. Att'y Gen. 02-065 (2002).  These circumstances, they argue, establish that each sheriff's administration is legally independent from the former administration.  Br. in Supp. of Mot. to Dismiss at 4-5.[7]

Sheriff Defendants' reliance on state law, however, is misplaced because the issue of whether to impose successor liability under Title VII is a question of federal law, rather than

---

[7]The court notes that the Virginia Attorney General's opinions merely establish that each sheriff possesses some degree of independence from his predecessor.  For example, in concluding that a sheriff may not bind his or her successors contractually, the Virginia Attorney General relied on Dillon's Rule, which provides that "local governing bodies may exercise only those powers conferred expressly or by necessary implication."  Op. Va. Att'y Gen. 02-065 (2002).  The Virginia Attorney General has not addressed whether a sheriff may be liable for the acts of his predecessor.  In any event, federal law, not state law, controls the issue of successor liability under Title VII.  <u>See</u> <u>infra</u> at 8-12.

state law.  See United States v. Gregory, 871 F.2d 1239, 1246 (4th
Cir. 1989) (noting a sheriff's argument that each sheriff is
legally independent from his predecessor under state law, but
applying federal law to determine whether to grant injunctive
relief against the current sheriff); King v. McMillan, No. 05-521,
2006 WL 2126279, *2 (W.D. Va. July 28, 2006) (explaining that the
issue turns on whether the defendant is an employer within the
meaning of Title VII); see also Jolliffe v. Mitchell, 971 F. Supp.
1039, 1041-42 (W.D. Va. 1997) (applying federal regulations to
determine whether a sheriff was liable under the Family Medical
Leave Act as the "successor in interest" to the prior sheriff).

In Gregory, the United States brought a Title VII action
against a sheriff based on his refusal to consider women for deputy
sheriff positions.  871 F.2d at 1239.  The United States sought
prospective relief to prevent further discrimination, and sought
back pay and jobs for certain women who were denied employment.
Id.  After the suit was filed, the sheriff was defeated in an
election, a different sheriff took office, and this new sheriff was
substituted as the defendant.  Id.  The new sheriff argued, among
other things, that prospective relief was not an appropriate remedy
because, under Virginia law, a sheriff's administration is legally
separate from the prior sheriff's administration.  Id. at 1246.
The Fourth Circuit rejected this argument, explaining that district
courts "clearly have the authority and should exercise the power to

grant injunctive relief even after apparent discontinuance of
unlawful practices." _Id._  The court noted that Title VII states
that if a district court finds that an employer "'<u>has</u> intentionally
<u>engaged in</u> or is intentionally engaging in an unlawful employment
practice . . . [the practice may be enjoined].'" _Id._ at 1246 n.28
(alteration in original) (quoting 42 U.S.C. § 2000e-5(g)(1)).  In
addition, the court deemed a back pay damage award appropriate, and
remanded the case for further proceedings in the district court.
<u>Gregory</u>, 871 F.2d at 1247 & n.30.

The reasoning of the Fourth Circuit in <u>Gregory</u> applies with
equal force in this case.  The provision of Title VII relied on in
<u>Gregory</u> provides as follows:

> If the court finds that the respondent has intentionally
> engaged in or is intentionally engaging in an unlawful
> employment practice charged in the complaint, the court
> may enjoin the respondent from engaging in such unlawful
> employment practice, and order such affirmative action as
> may be appropriate, which may include, but is not limited
> to, reinstatement or hiring of employees, with or without
> back pay (payable by the employer, employment agency, or
> labor organization, as the case may be, responsible for
> the unlawful employment practice), or any other equitable
> relief as the court deems appropriate.

42 U.S.C.A. § 2000e-5; <u>see also</u> § 2000e(n) (explaining that "[t]he
term 'respondent' means an employer, employment agency, [or one of
several other enumerated entities]").  In other words, Title VII
"vests broad equitable discretion in the federal courts to order
such affirmative action as may be appropriate to remedy a violation
including back pay and such other equitable relief as the court

deems appropriate." Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 356 (4th Cir. 1994). Thus, just as it was appropriate for the Fourth Circuit in Gregory to grant injunctive relief against the new sheriff and to award back pay based on Title VII violations committed by the former sheriff, it would be appropriate for this court in this case to allow Briggs to recover damages against Sheriff Defendants for Title VII violations committed by Waters.

Moreover, the court's conclusion in this case is consistent with the decision of the United States District Court for the Western District of Virginia in King, 2006 WL 2126279. In that case, a plaintiff brought a Title VII action against a sheriff, alleging, among other things, that the sheriff had maintained a hostile work environment. Id. at *1. After a new sheriff took office, the court substituted the new sheriff as the defendant pursuant to Federal Rule of Civil Procedure 25(d). Id. The new sheriff argued that this substitution was improper because the new sheriff was not the former sheriff's successor within the meaning of Rule 25(d). Id. at *2. The court rejected this argument, concluding that a new sheriff is the former sheriff's successor and is, therefore, liable under Title VII in an action for damages. Id.

The instant case is analogous to King. Just as it was proper for the district court in King to hold the new sheriff liable for damages based on the acts of the former sheriff, it would be proper

for this court in this case to hold Sheriff Defendants accountable for any Title VII violations committed during Waters's administration.  Accordingly, Briggs may recover against Watson's administration for Title VII violations committed during Waters's administration.[8]

### 3.   It Is Irrelevant That Watson Did Not Participate In Proceedings Before The EEOC.

Sheriff Defendants further contend that Watson is not a proper defendant because he lacked formal notice of, and did not have an opportunity to participate in, proceedings before the EEOC.  Br. in Supp. of Mot. to Dismiss at 6-7.   This argument is also unconvincing, as Watson was not sheriff when the EEOC proceeding occurred.  He is now in this suit in his official capacity under successor liability.  See supra Part III.A.2.  The fact that Watson did not personally participate in proceedings before the EEOC does not distinguish this case from Gregory and King, where courts granted relief against sheriffs based on Title VII violations committed by their predecessors.  See Gregory, 871 F.2d at 1239, 1246; King, 2006 WL 2126279, at *1-2.[9]

---

[8]The court notes that neither Plaintiff nor Sheriff Defendants provided the court with information indicating (1) what entity assumes the official assets and liabilities of a sheriff's predecessor in Virginia, or (2) who pays judgments in Virginia against a sheriff in his official capacity.  Both of these points are surely well-settled.

[9]Sheriff Defendants' argument further lacks merit because Briggs brought her EEOC complaint against the Sheriff's Office, and the EEOC substituted Watson as the respondent to that complaint.

**B.   Briggs May Not Bring Her Title VII Claims Against Waters**.

The court has already ruled that the Sheriff's Office, rather than Waters, is Briggs's employer within the meaning of Title VII. <u>Briggs</u>, 2006 WL 1982758 at *2.   The court declines to revisit the issue at this time.   <u>See</u> <u>Columbus-Am. Discovery Group v. Atl. Mut. Ins. Co.</u>, 203 F.3d 291, 304 (4th Cir. 2000) (explaining that under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case").   Briggs's Title VII claims against Waters are therefore **DISMISSED.**

**C.   Briggs Has Failed To State A Claim Upon Which Relief Can Be Granted As To Some, But Not All, Of Her Claims.**

In light of the above discussion, the court must determine whether it should dismiss the following claims under Rule 12(b)(6): (1) Briggs's Title VII claims against Sheriff Defendants, (2) Briggs's § 1983 claim against Waters, and (3) Briggs's § 1983 claim against Sheriff Defendants.

---

On July 16, 2005, Briggs brought her EEOC complaint against the Sheriff's Office.   <u>See</u> City of Portsmouth Br. in Supp. of Mot. to Dismiss for Lack of Jurisdiction Ex. 1.   When Watson replaced Waters as Sheriff of Portsmouth in January 2006, he and the Sheriff's Office became one and the same.   <u>See</u> <u>supra</u> note 6.   On March 31, 2006, the EEOC issued a Dismissal and Notice of Rights, notifying Briggs of her right to bring a lawsuit against respondent "Sheriff Bill Watson" of the Portsmouth Sheriff's Office.   <u>Id.</u> at Ex. 2.   On April 10, 2006, Briggs sought leave of this court to file an amended complaint naming the Sheriff's Office as a defendant.   As a result of this court's June 28, 2006, Order, Briggs filed an amended complaint, naming both the Sheriff's Office and Watson as defendants.   <u>See</u> <u>Briggs</u>, 2006 WL 1982758, *4; <u>supra</u> at 3.

### 1.   Briggs Has Properly Stated A Sexual Harassment Claim Under Title VII Against Sheriff Defendants.

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).   It also prohibits retaliation against an employee, making it unlawful for "an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." § 2000e-3(a).

In this case, Briggs's amended complaint alleges claims of retaliation and sexual harassment.  It can be fairly read to allege both hostile work environment sexual harassment and quid pro quo sexual harassment.

### a)   Retaliation

Briggs has failed to state a claim for retaliation under Title VII.  To establish a prima facie case of retaliation, a plaintiff must prove three elements: "(1) that she engaged in protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998).

14

Protected activities consist of (1) "participating in an ongoing investigation or proceeding under Title VII" and (2) "opposition activity." Id. at 259. Opposition activity includes "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Id.

In this case, Briggs has not stated a claim for retaliation under Title VII because she has not alleged that she was engaged in any protected activity when Waters fired her. See Iodice v. United States, 289 F.3d 270, 281 (4th Cir. 2002) ("Dismissal of a complaint for failure to state facts supporting each of the elements of a claim is, of course, proper."). She was not engaged in the protected activity of participation when fired. See Am. Compl. ¶ 4, 17 (alleging that Briggs was terminated in February 2005 and filed her complaint with the EEOC in July 2005). Also, Briggs does not allege that she utilized informal grievance procedures or voiced her opinion to bring attention to the sexual harassment problem. Her retaliation claim is therefore **DISMISSED.**

### b)   Hostile Work Environment Sexual Harassment

An employer violates Title VII when the workplace is permeated with gender based "intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Howard v. Winter, 446 F.3d 559, 565 (4th Cir. 2006). To establish

a sexual harassment claim, a plaintiff must show that "the offending conduct (1) was unwelcome, (2) was based on her sex, (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer." Id. (internal quotation omitted).

In this case, Briggs has alleged sufficient facts to state a hostile work environment claim.  She alleges the occurrence of unwelcome sexual advances.  Am. Compl. ¶ 18.  She also describes a "sexually hostile environment" created by "Waters and the Sheriff's Office" that interfered with her ability to work.  Id. ¶ 23.

### c)    Quid Pro Quo Sexual Harassment

Briggs has also stated a claim under Title VII based on quid pro quo sexual harassment.  To establish a prima facie case of quid pro quo sexual harassment under Title VII, a plaintiff must establish the following: "(1) she belongs to a protected group; (2) she was subject to unwelcome sexual advances; (3) the unwelcome conduct was because of sex; (4) her reaction to the harassment affected tangible aspects of her employment; and (5) there are grounds for holding the employer liable for the employee harasser's conduct." West v. MCI Worldcom, Inc., 205 F. Supp. 2d 531, 543 (E.D. Va. 2002); see Reinhold v. Virginia, 135 F.3d 920, 931 (4th Cir. 1998); Spencer v. General Elec. Co., 894 F.2d 651, 658 (4th Cir. 1990).  The fifth element is automatically satisfied where a supervisor harasses an employee.  Spencer, 894 F.2d at 658 n.10.

16

In this case, Sheriff Defendants concede that Briggs has
stated a claim for sexual harassment. <u>See</u> Br. in Supp. of Mot. to
Dismiss at 8 (noting that Briggs has alleged a "straightforward
harassment claim").  The court deems this concession appropriate.
Briggs alleges that she is female and was treated differently than
employees who had not rebuffed Waters's unwelcome sexual advances.
Am. Compl. ¶¶ 1, 21.  Her amended complaint explains that "[m]any
similarly situated persons outside of Plaintiff's protected class
were convicted of criminal charges of a more serious nature than
Plaintiff's during the time when Plaintiff worked for defendant
Waters at the Sheriff's Office and were not punished as severely as
Plaintiff."  <u>Id.</u> ¶ 14.  She also lists a specific example of an
employee who allegedly committed a more serious crime than Briggs
but was not fired or suspended.  <u>See</u> <u>id.</u>  In other words, she
alleges that she was discharged because she had rebuffed Waters's
sexual advances.  Such allegations state a claim for sexual
harassment under Title VII.

### 2.   Briggs Has Stated A Claim Under § 1983 Against Waters.

With respect to her claim under § 1983, Briggs alleges that
Waters deprived her of her constitutional right to equal
protection.  Waters argues (1) that Briggs has failed to state a
claim under § 1983 and (2) that, in any event, he is entitled to
qualified immunity.

**a)    Equal Protection**

Section 1983 creates a cause of action for a person deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by any person acting under color of state law.  42 U.S.C. § 1983.  The Fourth Circuit has explained that "the equal protection clause confers on a public employee a federal constitutional right to be free from gender discrimination" and that "sexual harassment has long been recognized to be a type of gender discrimination."  Beardsley v. Webb, 30 F.3d 524, 530-31 (4th Cir. 1994).  The elements that establish a prima facie case of discrimination under Title VII also establish a prima facie case of discrimination under § 1983.  Gairola v. Virginia Dept. of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985).

In this case, Waters argues that Briggs cannot assert a § 1983 claim against him.  The court disagrees.  First, Waters argues that Briggs cannot assert a violation of her right to equal protection because she could have brought a claim against him under Title VII.  See Waters's Mem. in Supp. of Mot. at 5 (citing Hughes v. Bedsole, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995) (concluding that the plaintiff could not "bring an action under § 1983 for violation of her Fourteenth Amendment rights because [the plaintiff] could have instituted a Title VII cause of action")).  This contention is incorrect with respect to both fact and law.  In this case, Briggs could not have brought a Title VII action against Waters because

Waters was not her employer within the meaning of Title VII. Briggs, 2006 WL 1982758 at *2; see supra Part III.B.  Moreover, the Fourth Circuit has recently clarified that the existence of a Title VII remedy does not preclude a claim under § 1983.  Booth v. Maryland, 327 F.3d 377, 382-83 (4th Cir. 2003) (explaining why Hughes is not controlling precedent).

Second, Waters argues that Briggs has not stated an equal protection claim because she has failed to allege that similarly situated persons outside her protected class were not discharged from their positions.  Waters's Mem. in Supp. of Mot. at 9-14. This argument is unavailing because not all of Briggs's averments fail in this regard.  See Am. Compl. ¶ 14; see also supra Part III.C.1.c (concluding that Briggs has stated a quid pro quo sexual harassment claim under Title VII).  In any event, Briggs has also stated an equal protection claim based on the existence of a hostile work environment.  See supra Part III.C.1.b (concluding that Briggs has stated a hostile work environmental sexual harassment claim under Title VII); Beardsley, 30 F.3d at 530-31 (explaining that sexual harassment is a form of gender discrimination); Gairola, 753 F.2d at 1285 (explaining that the same elements that establish discrimination under Title VII also establish discrimination under § 1983).

### b)   Qualified Immunity

Waters argues that he is entitled to qualified immunity with respects to Briggs's § 1983 claim.  As an initial matter, the court notes that it is appropriate to raise qualified immunity as a defense in a Rule 12(b)(6) motion.  <u>Ridpath v. Bd. of Governors Marshall Univ.</u>, 447 F.3d 292, 305 (4th Cir. 2006).  Government officials are entitled to the defense unless: "(1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known."  <u>Id.</u>  (internal quotations omitted).

In this case, Briggs has stated a § 1983 claim upon which relief can be granted based on the existence of (1) a hostile work environment and (2) quid pro quo sexual harassment.  The court must therefore assess whether the violation was "of a clearly established right of which a reasonable person would have known."  <u>Id.</u>  As discussed below, the court concludes that although qualified immunity shields Waters as to Briggs's allegations of hostile work environment sexual harassment, it does not protect Waters as to Briggs's allegations of quid pro quo sexual harassment.

As the Fourth Circuit has explained, "the line between a merely unpleasant working environment and a hostile or deeply repugnant one may be difficult to discern."  <u>Hopkins v. Baltimore</u>

20

Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996).  In Hopkins, the Fourth Circuit concluded that a plaintiff had failed to establish a prima facie case of sexual harassment under Title VII where (1) incidents of harassment allegedly occurred intermittently over a seven-year period, and (2) such incidents did not include overt sexual propositions or touching in a sexual manner.  Id. at 753-54. In the instant case, Briggs has not alleged that Waters made any overt sexual propositions or touched her in an inappropriate manner.  Thus, with respect to Briggs's allegations of hostile work environment sexual harassment, the court cannot conclude that Waters violated a clearly established right of which a reasonable person would be aware.  The instant case is simply too analogous to Hopkins.

Qualified immunity, however, does not shield Waters from Briggs's allegations of quid pro quo sexual harassment.  The gravamen of Briggs's amended complaint is that she was discharged because she had rebuffed Waters's sexual advances.  See Am. Compl. ¶¶ 26-32.  The right to be free from such sexual discrimination is a clearly established right of which a reasonable person would know.  It is clearly established that conduct constituting intentional sexual discrimination within the meaning of Title VII is also actionable under § 1983 .  Gairola, 753 F.2d at 1285; see Wright v. Rolette County, 417 F.3d 879, 884 (8th Cir. 2005) (explaining that "[s]exual harassment claims under section 1983 are

analyzed under the same standards developed in Title VII litigation"); <u>Richardson v. Leeds Police Dep't</u>, 71 F.3d 801, 805 (11th Cir. 1995) (noting that "[i]n a case such as this alleging disparate treatment," the elements of a cause of action under § 1983 and Title VII are the same); <u>see</u> <u>also</u> <u>Lankford v. City of Hobart</u>, 27 F.3d 477, 480 (10th Cir. 1994) (explaining that in 1989, it became clearly established in the Tenth Circuit that sexual harassment is actionable under § 1983, even where the sexual harassment is not coupled with firing or discharge). And it is clearly established that discharging an employee because the employee has rebuffed sexual advances violates Title VII. <u>See</u> <u>Garber v. Saxon Bus. Prods., Inc.</u>, 552 F.2d 1032, 1032 (4th Cir. 1977) (per curiam) (reversing a district court's decision to dismiss a complaint where the plaintiff alleged, among other things, that her male supervisor fired her for rebuffing sexual advances); <u>see</u> <u>also</u> <u>Rachel-Smith v. FTData, Inc.</u>, 247 F. Supp. 2d 734, 746-47 (D. Md. 2003) (concluding that a plaintiff established a prima facie case of sexual harassment under Title VII where the plaintiff alleged that her male supervisor placed her on probation and then transferred her to a new location because she had rebuffed his sexual advances). As the Code of Federal Regulations explains, "[h]arassment on the basis of sex is a violation of . . . Title VII," and

> [u]nwelcome sexual advances, requests for sexual favors,
> and other verbal or physical conduct of a sexual nature

22

constitute sexual harassment when (1) submission to such
conduct is made either explicitly or implicitly a term or
condition of an individual's employment, [or] (2) sub-
mission to or rejection of such conduct by an individual
is used as the basis for employment decisions affecting
such individual.

29 C.F.R. § 1604.11 (2006).

### 3. Briggs Has Stated A § 1983 Claim Against Sheriff Defendants.

To recover against a local government unit under § 1983, "the
plaintiff must show that the execution of a policy or custom of the
municipality caused the violation." Love-Lane v. Martin, 355 F.3d
766, 782 (4th Cir. 2004).  Liability may attach, however, for a
single decision or violation by a person who possesses "final
authority to establish municipal policy with respect to the action
ordered." Id. (internal quotations omitted).  In this case, Waters
allegedly terminated Briggs.  It is clear that a sheriff has final
decision-making authority for such decisions.  Jenkins v.
Weatherholtz, 909 F.2d 105, 107 (4th Cir. 1990) (explaining that
"sheriff's deputies are at will employees serving at the discretion
of their sheriffs").  Thus, Sheriff Defendants may be held liable
under § 1983 for the acts of Waters.[10]

### IV.  Conclusion

For the reasons set forth above, the court **DISMISSES**
(1) Briggs's Title VII retaliation and sexual harassment claims

---

[10]Sheriff Defendants have not raised Eleventh Amendment
immunity as a defense at this juncture.

against Waters, and (2) Briggs's Title VII retaliation claim against the Sheriff's Office and Watson.  Defendants' motions are **DENIED** as to all other claims.  Thus, the following claims remain pending in this lawsuit: (1) Briggs's Title VII sexual harassment claim against the Sheriff's Office and Watson; (2) Briggs's § 1983 claim against Waters; and (3) Briggs's § 1983 claim against the Sheriff's Office and Watson.  The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to counsel for Plaintiff and Defendants.

    **IT IS SO ORDERED.**[11]

/s/
Rebecca Beach Smith

Norfolk, Virginia

October 3, 2006

---

[11]An Index of this Memorandum Opinion is attached for reference purposes and made a part hereof.

24

**INDEX**

I. Factual and Procedural History.. . . . . . . . . . 1

II. Standard of Review. . . . . . . . . . . . . . . 4

III. Discussion.. . . . . . . . . . . . . . . . . . 4

A. The Sheriff's Office And Watson, In His
Official Capacity, Are Proper Defendants As To
Briggs's Title VII Claims. . . . . . . . . . . . . 4

    1. Briggs May Bring Title VII Claims Against
    "The Sheriff's Office".. . . . . . . . . . . . 5

    2. The Court May Hold Watson's Administration
    Liable For Title VII Violations Committed
    During Waters's Administration.. . . . . . . . 7

    3. It Is Irrelevant That Watson Did Not
    Participate In Proceedings Before The EEOC.. . 12

B.  Briggs May Not Bring Her Title VII Claims
Against Waters.. . . . . . . . . . . . . . . . . . 13

C. Briggs Has Failed To State A Claim Upon Which
Relief Can Be Granted As To Some, But Not All,
Of Her Claims. . . . . . . . . . . . . . . . . . . 13

    1. Briggs Has Properly Stated A Sexual
    Harassment Claim Under Title VII Against
    Sheriff Defendants.. . . . . . . . . . . . . . 14

        a) Retaliation. . . . . . . . . . . . . . . 14

        b) Hostile Work Environment Sexual
        Harassment. . . . . . . . . . . . . . . . . 15

        c) Quid Pro Quo Sexual Harassment.. . . . . 16

    2. Briggs Has Stated A Claim Under § 1983
    Against Waters.. . . . . . . . . . . . . . . . 17

        a) Equal Protection.. . . . . . . . . . . . 18

        b) Qualified Immunity.. . . . . . . . . . . 20

3. Briggs Has Stated A § 1983 Claim Against
Sheriff Defendants.. . . . . . . . . . . . . 23

IV.   Conclusion.. . . . . . . . . . . . . . . . 23